IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

WILLIAM CLINTON HARMON,

   *Plaintiff*,

v.

MARYLAND DEPARTMENT OF
HEALTH & MENTAL HYGIENE
and THE ORPHANS' COURT FOR
CECIL COUNTY, MARYLAND,

   *Defendants*.

Civil Action No. ELH-13-605

## MEMORANDUM

William Clinton Harmon, the self-represented plaintiff, has sued the Maryland

Department of Health and Mental Hygiene ("DHMH") and the Orphans' Court for Cecil County,

Maryland (the "Orphans' Court"), defendants.[1]  The case was recently transferred to this Court

from the United States District Court for the Eastern District of Pennsylvania, on the basis of

improper venue in that court.  *See* 28 U.S.C. §§ 1391(b) & 1406(a); *see also* ECF 6 (order to

---

[1] It is not entirely clear what specific entity or entities Mr. Harmon intended to sue, aside
from DHMH.  Mr. Harmon's Complaint (ECF 5) was submitted using a form complaint that the
Eastern District of Pennsylvania apparently makes available as a convenience for self-
represented litigants.  In the Complaint, the "Orphan's [sic] Court for Cecil County, Maryland"
was listed as the second defendant in the caption of the case.  Complaint at 1.  However, the form
Complaint also contained a section for the plaintiff to list the names and addresses of all
defendants and, in that section, Mr. Harmon identified the second defendant as "The Office of
Register of Wills for Cecil County."  Complaint at 2.

Under Maryland law, the Orphans' Court and the Register of Wills for a given county are
distinct (albeit related) entities.  *See* MD. CONST., Art. IV, § 40 (establishing an Orphans' Court
in Baltimore City and in each county other than Harford and Montgomery Counties); *id.* § 41
(establishing a Register of Wills in each county and Baltimore City); Md. Code (2011 Repl. Vol.,
2012 Supp.), § 2-101 of the Estates & Trusts Article ("E.T.") (defining "orphans' court"); E.T.
§ 2-201 (defining "register of wills").  The registers of wills "are in effect clerks of the orphans'
courts." *Miller v. Mencken*, 124 Md. 573, 93 A.2d 219, 221 (1915).  The distinction between the
Orphans' Court and the Register of Wills is not material in this case because, as I will explain,
the same general principles control the outcome, regardless of which entity or entities plaintiff
intended to sue.

transfer venue).   Apparently, Mr. Harmon filed suit in the Eastern District of Pennsylvania because he resides in Philadelphia.

The precise nature of Mr. Harmon's grievance is not clear from his Complaint.   In general, he complains of unspecified "violation[s] of [his] civil rights on a constitutional level," apparently arising out of proceedings in the Orphans' Court for the administration of the estate of Mr. Harmon's late uncle, Edward V. Harmon ("Edward").   Mr. Harmon served as the personal representative of Edward's estate.   From plaintiff's Complaint and other documents submitted with it, it appears that Edward passed away after a lengthy period of nursing care at a Veterans Administration hospital in Perry Point, Maryland.   After Edward's death, DHMH filed a claim against Edward's estate, seeking to recover amounts that it alleged it had paid for Edward's care. The Orphans' Court evidently approved DHMH's claim against the estate, and it appears that plaintiff sues for harm sustained as a result of that decision.   Plaintiff seeks $150,000 in damages.

In addition to suing on his own behalf, plaintiff named his mother (Edward's sister), Clindora Harmon ("Clindora"),[2] as an additional plaintiff.   However, by an Order entered on Feburary 5, 2013 (ECF 2), the district court in the Eastern District of Pennsylvania dismissed Clindora as a party because she had not signed the Complaint.[3]   In the same Order, the district court denied Mr. Harmon's motion for leave to proceed *in forma pauperis*, because the court

---

[2] I will refer to Clindora and Edward Harmon by their first names to avoid confusion with plaintiff, who has the same surname.

[3] This district's Local Rule 101.1(a) states: "Individuals who are parties in civil cases may only represent themselves."   Local Rule 102.1(a)(ii) provides that, "[w]hen a party is appearing without counsel, the Clerk will accept for filing only documents signed by that party." Presumably, the Eastern District of Pennsylvania adheres to similar rules.   Indeed, such rules are virtually ubiquitous precautions against the practice of law by persons who are not licensed as attorneys-at-law, who attempt to represent others in judicial proceedings.

determined that he had sufficient assets to afford the filing fee.  Mr. Harmon subsequently paid the filing fee and filed a "Request for Appointment of Attorney" (ECF 3).

On February 25, 2013, Mr. Harmon filed a "Motion" (ECF 4) asking the Pennsylvania district court to "reconsider" its decision to dismiss Clindora as a plaintiff.  Mr. Harmon stated that Clindora is 91 years old and suffers from dementia, among other serious health issues.  He also attached copies of a "Durable Power of Attorney" and a "Durable Medical Power of Attorney/Advance Medical Directive," by which Clindora apparently appointed Mr. Harmon as well as two of his siblings as her attorneys-in-fact for certain purposes.[4]  *See* ECF 4 at 3-9. Notably, plaintiff asserted: "I represent my mother." *Id.* at 2.

In an Order entered on February 25, 2013 (ECF 6), the Pennsylvania district court declined to rule on the pending request for appointment of counsel or the other "Motion," which the court construed as a request by Mr. Harmon "to represent his mother as her 'next friend' pursuant to Federal Rule of Civil Procedure 17(c)."  Instead, the court ruled that the Eastern District of Pennsylvania was an improper venue for the suit, and ordered the transfer of the case to this district.

I decline to rule as to appointment of counsel for Mr. Harmon or as to the propriety of Mr. Harmon's desire to litigate this suit on behalf of his mother as her next friend.  This is because it is clear that plaintiff's suit is not cognizable in a federal district court.  Therefore, as I explain below, I must dismiss the Complaint, without prejudice.

Federal district courts are courts of limited jurisdiction and "may not exercise jurisdiction absent a statutory basis." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005).  Moreover, a federal court has "an independent obligation to determine whether subject-

---

[4] The copy of the Durable General Power of Attorney that Mr. Harmon submitted appears to be missing one or more pages, including the signature page.

- 3 -

matter jurisdiction exists, even when no party challenges it." *Hertz Corp. v. Friend*, 559 U.S. 77,

___, 130 S. Ct. 1181, 1193 (2010).  Indeed, "[n]o court can ignore" a jurisdictional defect, once

it is discovered; "rather a court, noticing the defect, must raise the matter on its own." *Wis. Dept.*

*of Corrections v. Schacht*, 524 U.S. 381, 389 (1998).

As a self-represented litigant, Mr. Harmon is entitled to a liberal construction of his

pleadings.  *See, e.g.*, *Erickson v. Pardus*, 551 U .S. 89, 94 (2007).  But, liberal construction

cannot save a complaint where subject matter jurisdiction is plainly lacking.  When "even a

solicitous examination of the allegations" does not reveal anything "on which federal subject

matter jurisdiction may be based," a self-represented litigant's complaint must be dismissed.

*Weller v. Dept. of Soc. Servs. for City of Baltimore*, 901 F.2d 387, 391 (4th Cir. 1990).

Here, although the precise contours of plaintiff's claim are not entirely clear, what is clear

is that Mr. Harmon seeks to challenge the judgment of the Orphans' Court in the proceedings

concerning the administration of Edward's estate.  The *Rooker-Feldman* doctrine prohibits this

Court from exercising jurisdiction over such a challenge to a state court judgment.

The *Rooker-Feldman* doctrine is a jurisdictional rule that prohibits a federal district court

from hearing "cases brought by state-court losers complaining of injuries caused by state-court

judgments rendered before the district court proceedings commenced and inviting district court

review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544

U.S. 280, 284 (2005).[5]  In other words, "the doctrine forbids claims that 'seek [ ] redress for an

injury caused by the state-court decision itself' because they 'ask[ ] the federal district court to

conduct an appellate review of the state-court decision.'" *Adkins v. Rumsfeld*, 464 F.3d 456, 464

(4th Cir. 2006) (quoting *Davani v. Va. Dep't of Transp.*, 434 F.3d 712, 719 (4th Cir. 2006))

---

[5] The name of the *Rooker-Feldman* doctrine derives from the two leading Supreme Court cases in which it has been articulated and applied: *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983), and *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923).

(alterations in *Adkins*); *accord Am. Reliable Ins. Co. v. Stillwell*, 336 F.3d 311, 316 (4th Cir. 2003). The doctrine derives from 28 U.S.C. § 1257, a federal statute that vests the United States Supreme Court—and only the United States Supreme Court—with jurisdiction to hear appeals from state court decisions in cases raising questions of federal law. *See Adkins*, 464 F.3d at 463-64. The *Rooker-Feldman* doctrine precludes "lower federal courts . . . from exercising appellate jurisdiction over final state-court judgments." *Lance v. Dennis*, 546 U.S. 459, 463 (2006). As a jurisdictional rule, the *Rooker-Feldman* doctrine may be raised by a district court on its own initiative. *See Jordahl v. Democratic Party of Va.*, 122 F.3d 192, 197 n.5 (4th Cir. 1997).

Ordinarily, a party to a state court proceeding is able to raise objections on the basis of applicable federal law or federal constitutional provisions in the state proceeding. "'Under our system of dual sovereignty, . . . state courts have inherent authority, and are thus presumptively competent, to adjudicate claims arising under the laws of the United States.'" *Bullock v. Napolitano*, 666 F.3d 281, 285 (4th Cir. 2012) (quoting *Yellow Freight Sys., Inc. v. Donnelly*, 494 U.S. 820, 823 (1990)) (emphasis omitted). Maryland law provides for appellate review, in Maryland state courts, of decisions of an orphans' court. *See* Md. Code (2006 Repl. Vol., 2012 Supp.), §§ 12-501 & 12-502 of the Courts & Judicial Proceedings Article (permitting appeal of an orphans' court decision to a circuit court or to the Maryland Court of Special Appeals).[6] The *Rooker-Feldman* doctrine precludes a federal district court from short-circuiting that process and directly reviewing the judgment of a state court. *See Stillwell*, 336 F.3d at 319 ("[T]he *Rooker-Feldman* doctrine . . . by elevating substance over form, preserves the independence of state

---

[6] It is not clear from the limited materials presented by Mr. Harmon whether a final appealable judgment has been entered in the Orphans' Court, whether Mr. Harmon availed himself of the right to appeal from the Orphans' Court's decision under state law, or whether such an appeal would be timely. Moreover, I express no opinion as to whether Mr. Harmon would have any viable ground to appeal the state court decision—indeed, even if it were proper for this Court to express such a view, it is not possible to make any determination regarding the basis of the Orphans' Court's decision on the basis of the material plaintiff has presented.

courts as well as congressional intent that an appeal from a state court decision must proceed through that state's system of appellate review rather than inferior federal courts."). Accordingly, this Court has no authority to exercise jurisdiction in this case, and must dismiss plaintiff's Complaint.

Even if the *Rooker-Feldman* doctrine did not bar plaintiff's suit, it is barred for other reasons as well. The Eleventh Amendment to the United States Constitution, which preserves the sovereign immunity of the states, precludes a private individual from suing an unconsenting state or its agencies for monetary damages in federal court, absent waiver or a valid Congressional abrogation of sovereign immunity pursuant to Section Five of the Fourteenth Amendment. *See Seminole Tribe v. Florida*, 517 U.S. 44, 56-58 (1996); *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 101-02 (1984). In this case, all of the defendants are agencies of the State of Maryland that are entitled to sovereign immunity from suit under the Eleventh Amendment. *See, e.g., Coleman v. Court of Appeals of Maryland*, ___ U.S. ___, 132 S. Ct. 1327, 1333 (2012) (holding that Maryland state court was entitled to sovereign immunity under Eleventh Amendment); *Bright v. McClure*, 865 F.2d 623, 626 (4th Cir. 1989) (holding that suit against court clerk in official capacity, akin to Register of Wills, was barred by Eleventh Amendment); *Wimbush v. Booth-Moulden*, Civ. Nos. JKB-12-106 & JKB-12-655, 2012 WL 2575497, at *7 (D. Md. June 28, 2012) (holding that DHMH was entitled to sovereign immunity under Eleventh Amendment).

"While the State of Maryland has waived its sovereign immunity for certain types of cases brought in State courts, *see* Md. Code, Ann., State Gov't, § 12-101, *et seq*, it has not waived its immunity under the Eleventh Amendment to suit in federal court." *Dixon v. Baltimore City Police Dept.*, 345 F. Supp. 2d 512, 513 (D. Md. 2003). Moreover, plaintiff has

not expressly identified any federal statute under which he claims relief, as to which Congress has abrogated the states' sovereign immunity.   And, affording the Complaint a liberal construction, I cannot identify any basis for plaintiff's claims in such a statute.   Therefore, this suit must be dismissed for the additional reason that all of the defendants are entitled to sovereign immunity from suit in federal court under the Eleventh Amendment.

Finally, plaintiff has not expressly indicated that he wishes to sue the judge who presided over the litigation in the Orphans' Court in his or her individual capacity, or that he seeks to sue the Register of Wills in his or her individual capacity.   But, even if he did so, a suit against the judge would be barred by the doctrine of absolute judicial immunity, and a suit against the Register of Wills would be barred by absolute quasi-judicial immunity.   The defense of absolute immunity extends to "officials whose special functions or constitutional status requires complete protection from suit."   *Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982).   Judges, whether presiding at the state or federal level, fall squarely within the category of officials who are entitled to such immunity from suits for money damages in their individual capacities.   *Stump v. Sparkman*, 435 U.S. 349, 355-56 (1978).   Because the doctrine provides a benefit to the public at large, "whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences," *Pierson v. Ray*, 386 U.S. 547, 554 (1967), absolute immunity is necessary so that judges can perform their functions without harassment or intimidation.   "Although unfairness and injustice to a litigant may result on occasion, 'it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself.'" *Mireles v. Waco*, 502 U.S. 9, 10 (1991) (quoting *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 347 (1872)).

Whether a judge is entitled to judicial immunity for a given act turns on whether the challenged action was "judicial," and whether, at the time the challenged action was taken, the judge had subject matter jurisdiction. *See Stump*, 435 U.S. at 356. Unless it can be shown that a judge acted in the "clear absence of all jurisdiction," absolute judicial immunity exists even when the alleged conduct is erroneous, malicious, or in excess of judicial authority. *Id.* at 356-57. Here, plaintiff appears to challenge a duly-entered judgment of the Orphans' Court concerning a matter within its jurisdiction as to a decedent's estate. *See* E.T. § 2-102(a) (establishing jurisdiction of orphans' courts over decedents' estates, and providing that an orphans court "may conduct judicial probate, direct the conduct of a personal representative, and pass orders which may be required in the course of the administration of an estate of a decedent"). Such an act is quintessentially a "judicial" act as to which a judge is entitled to absolute judicial immunity from individual liability for damages.

Similarly, the doctrine of absolute quasi-judicial immunity insulates court personnel, such as the Register of Wills, from individual liability for damages, under certain circumstances. Absolute quasi-judicial immunity extends to non-judicial officers "performing tasks so integral or intertwined with the judicial process that these persons are considered an arm of the judicial officer who is immune." *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994) (citation omitted). Affording non-judicial officials absolute immunity guards against the "danger that disappointed litigants, blocked by the doctrine of absolute immunity from suing the judge directly [would] vent their wrath on clerks, court reporters, and other judicial adjuncts." *Sindram v. Suda*, 986 F.2d 1459, 1461 (D.C. Cir. 1993) (alteration in original) (quoting *Dellenbach v. Letsinger*, 889 F.2d 755, 763 (7th Cir. 1989)).

Courts have extended absolute immunity to protect clerks of court as well as others who enforce court orders.  *See, e.g.*, *Foster v. Walsh*, 864 F.2d 416, 417-18 (6th Cir. 1988) (holding that clerk of court was absolutely immune for issuing erroneous warrant pursuant to order of court).  *But see McCray v. Maryland*, 456 F.2d 1 (4th Cir. 1972) (holding that clerk of court was not entitled to absolute quasi-judicial immunity for failure to file papers submitted by litigant, because the clerk's duty properly to file court papers, "although associated with the court system, is not quasi-judicial (meaning entailing a discretion similar to that exercised by a judge)"; rather, "in respect to filing papers, the clerk has no discretion that merits insulation by a grant of absolute immunity; . . . the act of filing papers with the court is as ministerial and inflexibly mandatory as any of the clerk's responsibilities").  Here, plaintiff's Complaint gives no indication that his grievance, if any, with the Register of Wills arises from anything other than the performance of duties directed by the Orphans' Court.  As such, absolute quasi-official immunity bars a claim against the Register of Wills individually.

In sum, even if this action were not jurisdictionally barred by the *Rooker-Feldman* doctrine, it appears certain that plaintiff's Complaint would be barred by the Eleventh Amendment and the doctrine of absolute immunity.  A "district court may *sua sponte* [*i.e.*, on its own initiative] dismiss a complaint for failure to state a claim."  *Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 655 n.10 (4th Cir. 2006).  Indeed, "[w]here the face of a complaint plainly fails to state a claim for relief, a district court has 'no discretion' but to dismiss it."  *Id.*  (citing 5A WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1357 (2d ed. 1990)).

Accordingly, this action will be dismissed by the accompanying Order.


Date:  March 7, 2013                           _____/s/_____
                                               Ellen Lipton Hollander
                                               United States District Judge


- 9 -